**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| ADRIANA C. FORTNEY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:11-CV-4337-RWS |
| THE LINCOLN NATIONAL | : | |
| LIFE INSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | |

## <u>ORDER</u>

This case comes before the Court on Plaintiff's Motion for Partial Summary Judgment and Motion to Dismiss Defendant's Counterclaim [28] and Defendant's Motion for Summary Judgment [32]. After reviewing the record, the Court enters the following Order.

### Background

**I.     Factual Summary**

This case arises out of a dispute over life insurance proceeds to which Plaintiff allegedly is entitled. Except where otherwise indicated, the following facts are undisputed.

AO 72A
(Rev.8/82)

On or about May 8, 2009, Plaintiff's husband, Michael Fortney ("Mr. Fortney") signed and submitted an application for life insurance to Defendant. (Def.'s Statement of Material Facts To Which There Is No Genuine Issue To Be Tried ("Defs.' SMF"), Dkt. [32-12] ¶ 1.)  On June 2, 2009, after reviewing Mr. Fortney's medical records from his physician, Dr. Sanford Schwartz ("Dr. Schwartz"), Defendant issued Mr. Fortney a policy in the amount of $500,000, naming Plaintiff as beneficiary (the "Policy").  (Pl.'s Statement of Material Facts To Which There Is No Genuine Issue To Be Tried ("Pl.'s SMF"), Dkt. [28-26] ¶¶ 1, 4.)  The "effective date" listed on the Policy was June 2, 2009 and the "maturity or date of expiry" was listed as June 2, 2050.  (Stip. of Undisputed Facts, Ex. A (Policy), Dkt. [27-1] at 3-4 of 25.)

Defendant sent the Policy to insurance agent Melissa Colvin ("Colvin"), who received it on or before June 12, 2009.  (Pl.'s SMF, Dkt. [28-26] ¶ 5.) "Along with the Policy, Defendant prepared and mailed three other documents for Mr. Fortney to sign: (1) an Amendment to Application for Insurance, supplementing information from the original application; (2) a Policy Receipt; and (3) an Electronic Funds Transfer Authorization, for automatic withdrawal of future monthly premium payments from Mr. Fortney's checking account

each month." (Id. ¶ 6.) Colvin scheduled an appointment for Mr. Fortney to take delivery of the Policy and pay the first month's premium on June 17, 2009. (Id. ¶ 5.)

On Monday June 15, 2009, two days prior to his scheduled appointment with Colvin, Mr. Fortney saw his physician, Dr. Schwartz, complaining of a sore throat and cough productive of dark sputum that had lasted for several days. (Id. ¶ 9.) Dr. Schwartz diagnosed Mr. Fortney with sinusitus and prescribed him antibiotics. (Id.; 6/6/2012 Dep. of Dr. Schwartz ("Schwartz Dep."), Ex. 2, Dkt. [31-1] at 69 of 120.) He also conducted an X-ray of Mr. Fortney's chest, which revealed an "anterior mediastinal abnormality more apparent with appearance of a nodule." (Def.'s SMF, Dkt. [32-12] ¶ 32.) Dr. Schwartz indicated that the X-ray was "[p]ossibly abnormal," referred Mr. Fortney for a CT scan, and scheduled a follow-up appointment for June 18, 2009. (Id. ¶ 36; Pl.'s SMF, Dkt. [28-26] ¶¶ 10-11.) On the same day as his appointment with Dr. Schwartz, Mr. Fortney went to St. Joseph's hospital for the CT scan. (Def.'s SMF, Dkt. [32-12] ¶ 37.)

On June 17, 2009, Mr. Fortney attended his previously scheduled appointment with insurance agent Colvin. (Pl.'s SMF, Dkt. [28-26] ¶ 13.) At

3

that time, Mr. Fortney took delivery of the Policy, signed, <u>inter alia</u>, the

Amendment to Application of Insurance ("Amendment"), and delivered to

Colvin a check for the first month's premium payment.  (<u>Id.</u> ¶ 14; Def.'s SMF,

Dkt. [32-12] ¶ 24.)  The original application and Amendment were attached to

and made part of the Policy.  (Def.'s SMF, Dkt. [32-12] ¶ 23.)  Colvin

forwarded the delivery documents signed by Mr. Fortney and the first premium

check to Michelle Faulk at Capitas Financial, who then forwarded them to

Defendant.  (<u>Id.</u> ¶ 26.)  Defendant received the signed delivery documents and

first premium check on June 22, 2009 and on that date issued an endorsement to

Mr. Fortney's policy (the "Endorsement").  (<u>Id.</u> ¶ 27; Stip. of Undisputed Facts,

Ex. F (Endorsement), Dkt. [27-6].)  The Endorsement provided that the

effective date of Mr. Fortney's policy had been changed from June 2, 2009 to

June 22, 2009 "to reflect the receipt of the premium required for coverage."

(Stip. of Undisputed Facts, Ex. F (Endorsement), Dkt. [27-6] at 2 of 3.)  The

Endorsement further provided that it was "attached to" and "part of" the Policy.

(<u>Id.</u> at 3 of 3.)

On June 18, 2009, the day after he took delivery of the Policy, signed the

delivery documents, and issued a check for the first premium payment, Mr.

4

AO 72A
(Rev.8/82)

Fortney returned to Dr. Schwartz's office for a follow-up visit.  (Pl.'s SMF, Dkt. [28-26] ¶ 15.)  At that time, he was informed by Dr. Schwartz that due to the results of the CT scan, Mr. Fortney should have a biopsy to determine the condition of his lung.  (Id.)  Dr. Schwartz told Mr. Fortney that it could be something or could be nothing.  (Id.)  He did not mention the possibility that Mr. Fortney could have lung cancer.  (Id.)

On June 23, 2009, Mr. Fortney underwent a needle biopsy of his right lung.  (Id. ¶ 17.)  On June 25, 2009, Mr. Fortney was informed by Dr. Schwartz, for the first time, that he had lung cancer.  (Id. ¶ 18.)  Mr. Fortney died on December 7, 2009 as a result of lung carcinoma.  (Id. ¶ 10; Def.'s SMF, Dkt. [32-12] ¶ 49.)  On March 30, 2011, Plaintiff made a claim for death benefits under the Policy.  (Def.'s SMF, Dkt. [32-12] ¶ 50.)

On April 15, 2011, Defendant sent Plaintiff a letter denying her claim for benefits under the Policy on grounds of "material misrepresentations" in Mr. Fortney's insurance application and in the Amendment.  (Stip. of Undisputed Facts, Ex. K (Apr. 15, 2011 Letter), Dkt. [27-11].)  In particular, Defendant pointed to Mr. Fortney's failure to disclose that "a CXR (chest x-ray) was conducted on June 15, 2009, which revealed a lung nodule"; "a CT scan of the

chest was scheduled and performed on June 18, 2009"; and [a] needle biopsy of the lung nodule was performed on June 23, 2009, indicating adenocarcinoma of the lung."  (Id. at 2 of 11.)  The letter continued,

> The medical information pre-dates the amendment for this insurance and was not disclosed in answer to Question 1[1] of the Application.  This information was also not disclosed on the Amendment dated June 17, 2009.  If the information outlined above had been disclosed, [Defendant] would not have issued this policy as applied for.

(Id.)  The letter also made reference to Question 3 of the Health Summary portion of the insurance application, found on page 3A.[2]  (Id.)

Following the denial of Plaintiff's claim, Plaintiff filed this case to recover the life insurance benefits under the Policy, together with interest and

---

[1] Defendant states that the reference to Question 1 of the application was a mistake and that the intended reference was to Question 62.  (Def.'s Resp. to Pl.'s SMF, Dkt. [36] ¶ 20 (citing Affidavit of Sherri Lynn Wicker ("Wicker Aff."), Def.'s Mot. for Summ. J., Ex. 5, Dkt. [32-6] ¶¶ 9-12).)  Question 1 of the Application asked for the name of the Proposed Insured, and Question 62 asked for the name, address, and phone number of any physician seen by the Proposed Insured within the past five years.  (Stip. of Undisputed Facts, Ex. A (Policy), Dkt. [27-1] at 16, 18 of 25.)

[2] Question 3 of the Health Summary, found on page 3A of the application, asked whether the Proposed Insured had "had or been advised by a licensed medical professional to have a check-up, EKG, x-ray, blood or urine test or any other diagnostic test" or if the Proposed Insured was "now planning to seek medical advice or treatment for any reason."  (Stip. of Undisputed Facts, Ex. A (Policy), Dkt. [27-1] at 19 of 25.)

attorney fees, and a statutory penalty for bad faith.  (Compl., Dkt. [1-1] ¶¶ 25-26.)  Defendant filed a Counterclaim for rescission of the Policy under O.C.G.A. § 33-24-7(b)[3] and for a declaration by this Court that the Policy was void ab initio and of no effect.  (See generally Def.'s Answer & Counterclaim, Dkt. [2] ¶¶ 57-71 ("Counterclaim").)  Both parties now move for summary judgment.  Plaintiff moves for partial summary judgment, seeking judgment as

---

[3] This provision states:

Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless:

(1)     Fraudulent;

(2)     Material either to the acceptance of the risk or to the hazard assumed by the insurer; or

(3)     The insurer in good faith would either not have issued a policy or contract or would not have issued a policy or contract in as large an amount or at the premium rate as applied for or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been known to the insurer as required either by the application for the policy or contract or otherwise.

Defendant moves for summary judgment on its Counterclaim pursuant to O.C.G.A. § 33-24-7(b)(2) and (3).  (See generally Mem. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem."), Dkt. [32-1] at 16-24.)

a matter of law on her claim for benefits under the Policy.[4]  (Pl.'s Mot. for

Summ. J., Dkt. [28] at 1-2.)  Plaintiff also moves to dismiss Defendant's

Counterclaim.  (Id.)  Defendant moves for summary judgment on all of

Plaintiff's claims and on its Counterclaim.  (Def.'s Mot. for Summ. J., Dkt. [32]

¶ 4.)

## II.     The Parties' Arguments

Plaintiff raises, among other arguments, the following in support of her

motion for summary judgment on her claim for benefits under the Policy.  First

and foremost, Plaintiff argues that the Policy went into effect on June 2, 2009,

the "effective date" listed on the Policy.  (Pl.'s Br. in Supp. of Pl.'s Mot. for

Partial Summ. J. & to Dismiss Def.'s Counteclaim ("Pl.'s Br."), Dkt. [28-2] at

2, 5, 7-13; Stip. of Undisputed Facts, Ex. A (Policy), Dkt. [27-1] at 4 of 25.)

Thus, Plaintiff contends, because the Policy was in effect on June 2, 2009, Mr.

Fortney was under no obligation to provide additional medical information to

Defendant obtained after that date.  (Id.)  In further support of this argument,

Plaintiff points out that the "Maturity or Date of Expiry" listed on the Policy

_____

[4] Plaintiff does not move for summary judgment on her statutory claim for a
bad faith penalty and attorney fees.  (Pl.'s Mot. for Summ. J., Dkt. [28] at 1.)

was June 2, 2050 and that Defendant withdrew Mr. Fortney's monthly premium payments on approximately the third of each month, starting on July 3, 2009 (after the first premium payment had been paid).  (Id. at 10-11.)

Second, Plaintiff argues that even if the Policy did not go into effect on June 2, 2009 but, rather, on a later date, Defendant's defense of misrepresentation fails because Mr. Fortney was under no obligation to disclose to Defendant subsequent medical information, in particular, that he had undergone a chest x-ray on June 15, 2009 and subsequent CT scan.  (Id. at 13-15.)  Plaintiff contends that the language in the insurance application relied on by Defendant—obligating Mr. Fortney "upon receipt of the contract" to "notify [Defendant] immediately if any information in the application is incorrect"—only required Mr. Fortney to ensure that the information in the insurance application was correct as of the date it was completed—May 8, 2009.  (Id. at 5-6, 13-15.)

Defendant contends, on the other hand, that the insurance application contained several misrepresentations, omissions, and incorrect statements regarding Mr. Fortney's health, rendering the Policy void ab initio and entitling Defendants to rescission under O.C.G.A. § 33-24-7(b)(2) and (3).  (See

9

generally Defs.' Mem. in Opp'n to Pl.'s Mot. for Partial Summ. J. and to Dismiss Def.'s Counterclaim ("Def.'s Opp'n Br."), Dkt. [35] & Mem. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem."), Dkt. [32-1].)  To this end, Defendant argues that the earliest the Policy could have gone into effect was June 17, 2009—the date on which Mr. Fortney took delivery of the Policy, signed the Amendment, and issued the first premium payment.[5]  (Def.'s Opp'n Br., Dkt. [35] at 11-13.)  In support of this argument, Defendant points to the "Agreement and Acknowledgment" section of the insurance application, which provides,

> I/We [Mr. Fortney] . . . agree that . . . insurance will take effect under the Policy only when: 1) the Policy has been delivered to and accepted by me/us; 2) the initial premium has been paid in full during the lifetime of the Proposed Insured(s); and 3) the Proposed Insured(s) remain in the same state of health and insurability as described in each part of the application at the time conditions 1) and 2) are met.

(Stip. of Undisputed Facts, Ex. A (Policy), Dkt. [27-1] at 20 of 25.)  Defendant also points out that the insurance application obligated Mr. Fortney "upon receipt of the contract" to "notify [Defendant] immediately if any information

---

[5] Defendant also states that "arguably, the true 'effective date' was June 22, 2009," the date on which the Endorsement was issued.  (Def.'s Opp'n Br., Dkt. [35] at 11.)

10

in the application is incorrect." (Def.'s Mem., Dkt. [32-1] at 21 (citing Stip. of Undisputed Facts, Ex. A (Policy), Dkt. [27-1] at 20 of 25).)

Defendant argues that as of June 15, 2009, two days before the Policy's earliest possible effective date, the insurance application contained several misrepresentations and omissions regarding Mr. Fortney's health, in light of Mr. Fortney's failure to disclose his June 15, 2009 appointment with Dr. Schwartz and the subsequent chest x-ray and CT scan. (Def.'s Mem., Dkt. [32-1] at 18-21; Def.'s Opp'n Br., Dkt. [35] at 6-9.) Specifically, Defendant contends that the following questions in the application were false as of June 15, 2009:

> Question 62:      Provide full name/address/phone number of personal physician(s) and any other physicians seen within the past 5 years.
>
> a.    Date and reason for last visit:
>
> b.    Tests performed and treatment received:

(Stip. of Undisputed Facts, Ex. A (Policy), Dkt. [27-1] at 18.)

> Question 3:       Have you had or been advised by a licensed medical professional to have a check-up, EKG, x-ray, blood or urine test or any other diagnostic test or are you now planning to seek medical advice or treatment for any reason?

11

(Stip. of Undisputed Facts, Ex. A (Policy), Dkt. [27-1] at 19.)

Question 5:       In the past 10 years, have you had any
                  indication of, or been treated by a medical
                  professional for:

         b.       Any tumor, cancer, cysts, melanoma,
                  lymphoma or any disorder of the lymph
                  nodes?[6]

         e.       . . . [A]ny . . . disorder of the respiratory
                  system?

         l.       Any mental or physical disorder or
                  medically or surgically treated condition
                  not listed above?

(Stip. of Undisputed Facts, Ex. A (Policy), Dkt. [27-1] at 19.)

(Def.'s Mem., Dkt. [32-1] at 18-21.)  On the basis of these purported

misrepresentations or falsities, Defendant contends the Policy is subject to

rescission and thus seeks judgment as a matter of law on Plaintiff's claims and

on Defendant's counterclaim.

---

[6] Defendant argues that this particular question was false not only as of June
15, 2009 but also on the date Mr. Fortney applied for insurance, May 8, 2009.  (Def.'s
Mem., Dkt. [32-1] at 18.)  In support of this contention, Defendant relies on the
opinion of its expert, Dr. Fadlo Khuri, that Mr. Fortney had lung cancer on May 8,
2009.  (Id. at 18-19.)  This argument is discussed in footnote 7, infra.

**Discussion**

I.      **The Parties' Motions for Summary Judgment [28], [32]**

      A.    <u>Legal Standard</u>

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"  <u>Hickson Corp. v. N. Crossarm Co.</u>, 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material.  <u>Id.</u> at 248.  A fact is not material if a dispute over that fact will not affect the outcome

13

of the suit under the governing law.  Id.  An issue is genuine when the evidence

is such that a reasonable jury could return a verdict for the non-moving party.

Id. at 249-50.

In resolving a motion for summary judgment, the court must view all

evidence and draw all reasonable inferences in the light most favorable to the

non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th

Cir. 2002).  But, the court is bound only to draw those inferences which are

reasonable.  "Where the record taken as a whole could not lead a rational trier

of fact to find for the non-moving party, there is no genuine issue for trial."

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

"If the evidence is merely colorable, or is not significantly probative, summary

judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations

omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met

its burden under Rule 56(a), the nonmoving party "must do more than simply

show there is some metaphysical doubt as to the material facts").

Finally, the filing of cross-motions for summary judgment does not give

rise to any presumption that no genuine issues of material fact exist.  Rather,

"[c]ross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." Shaw Constructors v. ICF Kaiser Eng'rs, Inc., 395 F.3d 533, 538-39 (5th Cir. 2004).

B.     Analysis

1.     *Plaintiff's Claim for Benefits under the Policy*

The Court agrees with Plaintiff that the Policy went into effect on June 2, 2009 and therefore that Mr. Fortney was under no obligation to disclose to Defendant subsequent medical information, including Mr. Fortney's June 15, 2009 appointment with Dr. Schwartz, his chest x-ray, or his CT scan.  As Defendant points out, the insurance application, which was made part of the Policy, contained the following language concerning when insurance would take effect under the Policy:

> [I]nsurance will take effect under the Policy only when: 1) the Policy has been delivered to and accepted by me/us; 2) the initial premium has been paid in full during the lifetime of the Proposed Insured(s); and 3) the Proposed Insured(s) remain in the same state of health and insurability as described in each part of the application at the time conditions 1) and 2) are met.

15

(Stip. of Undisputed Facts, Ex. A (Policy), Dkt. [27-1] at 20 of 25.)  The

application further provided:

> I confirm upon receipt of the contract I will review the answers
> recorded on the application.  I will notify [Defendant] immediately
> if any information in the application is incorrect.  Caution: If your
> answers on this application are incorrect or untrue, the Company
> may have the right to deny benefits or rescind coverage under the
> policy . . . .

(Id.)  Despite these conditions, however, the Policy bore an "effective date" of

June 2, 2009.  (Id. at 4 of 25.)  The Georgia Supreme Court has held that in such

instances, where conditions precedent to liability contained in an insurance

application conflict with a date certain on which insurance coverage is to go

into effect, the date certain controls.  Sw. Life v. Middle Ga. Neurological

Specialists, 416 S.E.2d 496, 498 (Ga. Ct. App. 1992).

In Southwestern Life, the insured submitted applications for insurance,

which contained the following clause:

> . . . [T]he policy will be effective when it is delivered to and
> accepted by the Applicant only if (a) the first premium has been
> paid, and (b) all answers recorded in this application represent
> without material change complete and true answers to the same
> questions as if they were asked at the time of delivery of the policy
> applied for . . . .

16

Id. at 496-97 (emphasis added).  Policies of insurance subsequently were issued and stated, "The policy date is the effective date for all coverage provided in the original application."  Id. at 497.  The policy date was listed as March 28.  Id. Before the policies could be delivered, the insured suffered a heart attack and died.  Id.  The beneficiaries of the policies filed suit to recover the policy proceeds.  Id.

The insurance company argued "that coverage was not in effect at the time of [the proposed insured's] death because the conditions precedent to liability that were included in the application were not met"—namely, delivery of the policies to the insured.  Id. at 498.  While recognizing that "an insurance company may validly define conditions precedent to liability," the Georgia Supreme Court rejected this argument.  Id.  The court noted, "Where both the application and the issued policy state conditions precedent to liability, and the policy has no conflicting provision, such conditions will be enforced by Georgia courts."  Id.  The court continued, "However, where the conditions precedent to liability that are described in the application or policy are contradicted by a specified date on which insurance coverage is to take effect, the date certain controls."  Id. (emphasis added).  Thus, the court rejected the

17

insurance company's argument and found that it "incurred the absolute duty to perform under the contract on March 28, the stated 'effective date' of the policy." Id.

In light of the ruling in Southwestern Life, the Court concludes that the effective date stated in the Policy controls, notwithstanding the contrary conditions set out in the application.  Insurance coverage under the Policy thus went into effect on June 2, 2009.  Because the Policy was in effect as of this date, Mr. Fortney was under no obligation to disclose to Defendant medical information obtained after this date.[7]  Mr. Fortney's failure to disclose this

_____

[7] Relying on the report of its expert, Dr. Khuri, Defendant also argues that the Policy was void on June 2, 2009 because information in the application was false or misrepresented as of that date.  (Def.'s Mem., Dkt. [32-1] at 18; Def.'s Opp'n Br., Dkt. [35] at 6-7.)  In particular, Defendant argues:

> The application asked . . . whether Mr. Fortney in the past 10 years had any indication of, or had been treated by a licensed medical professional for any tumor, cancer, cysts, melanoma, lymphoma or any disorder of the lymph nodes, which Mr. Fortney denied. . . .  This answer was false regardless of the good faith and/or subjective belief of Mr. Fortney at the time he completed the application. . . .  Fortney had at least stage II lung cancer by May 8, 2009, based on evidence of undocumented stage IIB disease by June 15, 2009, and stage IIIA disease by surgical biopsy on July 20, 2009.

(Def.'s Mem., Dkt. [32-1] at 18; Def.'s Opp'n Br., Dkt. [35] at 6-7 (internal quotation marks and citations omitted).)  Defendant maintains this argument while conceding that Mr. Fortney was not diagnosed with lung cancer—or informed that he may have

18

lung cancer—until June 25, 2009.  (Def.'s Resp. to Pl.'s SMF, Dkt. [36] ¶ 18; see also Def.'s Mem., Dkt. [32-1] at 18 (arguing Mr. Fortney's good faith and/or subjective belief at the time he completed the application is irrelevant to whether the application answers were false).)

Defendant appears to be correct that an insurance policy may be avoided on grounds of falsehoods or misrepresentations contained in the insurance application, even if the prospective insured acted in good faith or lacked knowledge as to the falsehood or misrepresentation.  For example, in White v. American Family Life Assurance Company, a life insurance policy was held to be void because of material misrepresentations made in the insurance application and despite the Whites' good faith in making the application.  643 S.E.2d 298, 300 (Ga. Ct. App. 2007).  The application asked, "Has anyone to be covered ever been diagnosed with or received treatment for impaired kidney function or other listed maladies by a member of the medical profession," to which the Whites answered "no."  Id. at 299 (internal quotation marks omitted).  They also answered "no" a question regarding "whether either of them had been diagnosed with, received treatment for, or been prescribed medication for kidney disease within the last five years."  Id. (internal quotation marks omitted).  After the policy was issued, however, medical records revealed that Mr. White "had been diagnosed with impaired kidney function (resulting from his diabetes), and that only three months prior to the completion of the insurance application, his doctor had confirmed to him orally and in writing that he was taking medication to prevent further loss of kidney function."  Id.

The Whites introduced evidence at trial that although Mr. White "had been diagnosed and treated with medication for impaired kidney function and kidney disease . . . [they] believed the treatment was only related to his diabetes and were unaware of any kidney problems at the time they completed the insurance application."  Id.  The court, however, held that under O.C.G.A. § 33-24-7(b)(2) and (3), the insurer need only show that a representation was false and material; the court held that it is "immaterial whether the applicant acted in good faith in completing the application."  Id. (internal quotes and citations omitted).  The other cases cited by Defendant—e.g., Davis v. John Hancock Mut. Life Ins. Co., 413 S.E.2d 224 (Ga. Ct. App. 1991) and Worley v. State Farm Mut. Auto. Ins. Co., 432 S.E.2d 244, 246 (Ga. Ct. App. 1993)—stand for the same principle as White.  (Applying this principle, the court in Davis held that an insurance application contained material misrepresentations, voiding the policy, when it failed to disclose that the prospective

19

information therefore does not render the Policy void.  Plaintiff's Motion for

Partial Summary Judgment [28] therefore is **GRANTED** as to her claim for

benefits under the Policy, and Defendant's Motion for Summary Judgment [32]

on this claim is **DENIED**.

       2.     *Defendant's Counterclaim for Rescission*

In light of the Court's ruling in Part I.B.1, <u>supra</u>, that the Policy went into

---

insured was suffering from leukemia, which was <u>undiagnosed</u> at the time the
application was made.  413 S.E.2d at 226-27.  The application asked whether the
prospective insured was "in good health" or "ever had any major illness" such as
cancer.  <u>Id.</u> at 225.)

      These cases do not compel the conclusion, urged by Defendant, that Mr.
Fortney's insurance application was false on June 2, 2009.  They stand for the
proposition that an insurance policy may be avoided because of a falsehood or
misrepresentation contained in the insurance application, even if the prospective
insured made the application in good faith and/or was unaware that information in the
application was misrepresented or false.  In this case, the insurance application asked
whether Mr. Fortney in the past ten years had had "<u>any indication of</u>, or been <u>treated</u>
by a licensed medical professional for . . . any tumor, cancer, cysts, melanoma,
lymphoma or any disorder of the lymph nodes[.]"  Thus, pretermitting the issue
whether Mr. Fortney actually had cancer on June 2, 2009, the answer "no" to this
question was not false or a misrepresentation, as there is no evidence in the record that
Mr. Fortney had had any "indication of" or had "been treated by a licensed medical
professional for" lung cancer as of June 2, 2009.  On the contrary, Defendant
concedes that Mr. Fortney was first informed of his lung cancer on June 25, 2009,
after which he obtained treatment for the first time.  (Def.'s Resp. to Pl.'s SMF, Dkt.
[36] ¶ 18.)  The opinion of Defendant's expert—based on an ex post review of Mr.
Fortney's medical information—that Mr. Fortney did, in fact, have lung cancer prior
to June 2, 2009, does not make the application answer false or a misrepresentation.

effect on June 2, 2009 and that Plaintiff is entitled to benefits thereunder,

Defendant's Motion for Summary Judgment [32] on its Counterclaim for

rescission is **DENIED**.

> 3.    *Plaintiff's Claim for Bad Faith Penalties & Attorney Fees*

Pursuant to O.C.G.A. § 33-4-6, Plaintiff seeks to recover a bad faith

penalty and attorney fees based on Defendant's refusal to pay her claim.

(Compl., Dkt. [1-1] ¶ 26.)  Defendant moves for summary judgment on this

claim.  (Def.'s Mem., Dkt. [32-1] at 24-25.)

"To support a cause of action for bad faith penalties and attorney fees

against an insurance company for refusal to pay a claim, it must be shown that

the refusal was made in bad faith."  Fortson v. Cotton States Mut. Ins. Co., 308

S.E.2d 382, 384 (Ga. Ct. App. 1983) (citing O.C.G.A. § 33-4-6).  "The insured

bears the burden of proving bad faith, which is defined as any frivolous and

unfounded refusal in law or in fact to comply with the demand of the

policyholder to pay according to the terms of the policy."  Id. (internal

quotations and citation omitted).  Because O.C.G.A. § 33-4-6 is penal in nature,

it must be strictly construed, and the right to recovery must be clearly shown.

Id.

"[B]ad faith is shown by evidence that, under the terms of the policy . . . the insurer had no 'good cause' for resisting . . . payment." <u>Worsham v. Provident Cos.</u>, 249 F. Supp. 2d 1325, 1341 (N.D. Ga. 2002) (internal quotation marks and citation omitted).  Where the insurance company had any reasonable ground on which to contest a claim, penalties for bad faith are not available. <u>Fortson</u>, 308 S.E.2d at 385.  "The mere fact of nonpayment is not evidence of bad faith, nor is any burden thereby cast on the insurer to prove good faith." <u>Fla. Int'l Indemnity Co. v. Osgood</u>, 503 S.E.2d 371, 375 (Ga. Ct. App. 1998) (internal quotation marks and citation omitted).  "Ordinarily, the question of good or bad faith is for a jury, but when there is no evidence of unfounded reason for the nonpayment . . . the court should disallow imposition of bad faith penalties." <u>Id.</u> (internal quotation marks and citation omitted).

The Court finds that Plaintiff has failed to produce evidence that Defendant acted in bad faith when it refused to pay Plaintiff's claim under the Policy.  On the contrary, the evidence shows that Defendant refused to pay Plaintiff's claim based on its determination that Mr. Fortney failed to disclose material information regarding his health and medical history.  As stated in Part I.B.1, <u>supra</u>, the Court has found this determination to be in error, as the Policy

22

was in effect prior to Mr. Fortney obtaining the medical information about

which Defendant complains.  Although the Court has found Defendant's

position to be without merit, it was not frivolous or unfounded, and there is no

other evidence in the record to suggest it was taken in bad faith.  Accordingly,

Defendant's Motion for Summary Judgment [32] is **GRANTED** on Plaintiff's

statutory claim for bad faith and attorney fees.

## II.      Plaintiff's Motion to Dismiss Defendant's Counterclaim [28]

Plaintiff moves to dismiss Defendant's Counterclaim under Federal Rule

of Civil Procedure ("Rule") 12(b)(6).  (Dkt. [28-2] at 17-20.)  Defendant

contends that the motion to dismiss is "untimely and procedurally barred" under

Rule 12 because it was filed after Plaintiff filed an Answer to Defendant's

Counterclaim.  (Def.'s Opp'n Br., Dkt. [35] at 25.)  Plaintiff does not appear to

disagree with this argument, stating in her Reply Brief,

> In light of Defendant's argument found at page 25 of Defendant's
> Memorandum Plaintiff respectfully requests leave of this court to
> consider Plaintiff's Motion to Dismiss Defendant's Counterclaim
> at this time or, alternatively, asks this Court to treat Plaintiff's
> Motion regarding Defendant's couterclaim as a Motion for
> Summary Judgment.

(Dkt. [37] at 15.)

AO 72A
(Rev.8/82)

As Plaintiff appears to concede, Defendant is correct that Plaintiff's Motion to Dismiss is procedurally improper. Rule 12(b) provides, "A motion asserting [a Rule 12(b)] defense[ ] must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Thus, Plaintiff's Rule 12(b)(6) Motion to Dismiss should have been made before Plaintiff filed her Answer to Defendant's Counterclaim. In light of the Court's rulings in Part I, supra, however, granting Plaintiff's Motion for Summary Judgment on her claim for benefits under the Policy and denying Defendant's Motion for Summary Judgment on its Counterclaim for rescission, it appears to the Court that Defendant's Counterclaim should be subject to dismissal. Accordingly, Defendant is **ORDERED TO SHOW CAUSE** within fourteen days of the date of entry of this Order why the Court should not dismiss its Counterclaim.

### Conclusion

In accordance with the foregoing, Plaintiff's Motion for Partial Summary Judgment [28] is **GRANTED**. Defendant's Motion for Summary Judgment [32] is **GRANTED in part and DENIED in part**. It is **GRANTED** as to Plaintiff's statutory claim for bad faith penalties and attorney fees but **DENIED** as to Plaintiff's claim for benefits under the Policy. In light of these rulings,

24

Defendant is **ORDERED TO SHOW CAUSE** within fourteen days of the date of entry of this Order why its Counterclaim should not be dismissed.

      **SO ORDERED**, this  15th  day of July, 2013.


**RICHARD W. STORY**
United States District Judge